WILLIAM L. B. ABERNATHIE *et al.*

*v.*

WILLIAM C. RICH, Sr. *et al.*

*Opinion filed October 23, 1907.*

1. PARTIES—*all persons having an interest in land must be made parties to partition suit.* Children of a deceased heir, or those who have succeeded to the interest of such heir, and who, under the theory of a bill for partition and accounting, are entitled to a share of the rents and profits, must be made parties to the suit.

2. SAME—*the grantors of deeds sought to be set aside should be made parties.* The grantors in certain warranty deeds sought to be set aside as null and void by a bill for partition and accounting are necessary parties to the bill.

3. SAME—*court should not proceed with case if want of necessary parties appears.* Whenever it appears that a final decree in a chancery case cannot be rendered without materially affecting the rights and interests of persons not parties to the suit, neither the court of original jurisdiction nor a court of review should proceed

further until the omission is corrected, even though no objection is made by any party to the suit.

4. SAME—*effect where complainants fail to bring in necessary parties.* A decree against the complainants in a bill for partition will not be reversed for the failure of the complainant to bring in necessary parties, provided all the complainants are free from legal disability; but if one complainant is under legal disability it is the duty of a court of review to protect her rights, and in such case the decree will be reversed to enable the complainants to amend their bill to bring in the necessary parties.

WRIT OF ERROR to the Circuit Court of Union county; the Hon. W. N. BUTLER, Judge, presiding.

Plaintiffs in error filed their bill against defendants in error, in the circuit court of Union county, to set aside certain deeds executed by James M. Abernathie, now deceased, to lands now in possession of certain of the defendants in error, and for other relief.

From the record it appears that James M. Abernathie died intestate on January 12, 1877, leaving surviving him a widow and children. On September 20, 1876, the deceased was the owner of two farms in Union county, the titles to which are here in dispute. One of the farms contained 248.32 acres, and was worth from $10 to $15 an acre, and the deceased, with his family, resided thereon. The other contained 160 acres, and was worth from $15 to $20 an acre. Of this tract 120 acres was mortgaged by deceased and his wife to one Hugh M. Andrews, prior to the last mentioned date, to secure the payment of $371.63. This mortgage was afterward foreclosed and the property sold for the debt, interest and costs, and on February 6, 1882, a master's deed was executed, conveying to William S. Hanners, one of the defendants herein, the property conveyed by said mortgage. On September 20, 1876, James M. Abernathie and his wife executed a deed to all of the above described land, except 40 acres of the larger tract, to James R. Abernathie, a son of James M., and at the same

time the father executed a bill of sale of all his personal property to his said son. There seems to have been no consideration for either conveyance. On the same day the instruments were filed for record in the recorder's office of Union county, and afterward, when recorded, were returned to James M. Abernathie and were found among his papers after his death. Shortly after the father's decease James R. Abernathie, as he says, learned from Hanners for the first time of the execution of the deed and bill of sale, and upon Hanners' advice went to the house in which his father had resided and obtained possession of the papers. Upon the death of James M. Abernathie, the father, James R. Abernathie, the son, took out letters of administration upon his estate. In the inventory filed by him he scheduled all the personal property which had been transferred to him under the said bill of sale and had the same appraised, the appraisement amounting to $1120.32. The inventory also contained the following entry: "Real estate was deeded to James R. Abernathie during the lifetime of James M. Abernathie, now deceased." The widow's award was fixed at $1277, and on June 27, 1877, she receipted the administrator for all of the personal property. Claims amounting to several hundred dollars were allowed against the estate.

The bill herein was filed by three of the children and one grandchild of the deceased, the grandchild being a child of his daughter, Louisa J. Carter, whose death followed that of her father. The bill sets out, in substance, the foregoing statements of fact, and alleges that immediately upon the filing of the receipt of the widow for the personal property, the said Hanners, who was then county clerk of Union county, procured the removal of James R. Abernathie as administrator and went to the home of the widow and represented to her that because of the execution of the deed and bill of sale above mentioned she had no right to either the real estate or personal property; that he was administrator since the removal of James R. Abernathie, and that

the personal property must be turned over to him to pay the debts of the estate; that he took possession of and sold the same for $900, and afterwards, on June 1, 1878, used said money with which to purchase the land at said foreclosure sale; alleges that on the day of said sale the said Hanners and one Jesse Ware, who was the solicitor for the complainant in the foreclosure proceeding, procured the intoxication of said James R. Abernathie, and while he was so intoxicated they secured his signature to a quit-claim deed to said Hanners for the said 160-acre tract; that on June 5, 1878, said Andrews, Ware and Hanners went to a harvest field where James R. Abernathie was at work, and by false representations Hanners and Andrews induced him to sign a paper which afterward proved to be a deed to N. B. Collins, Samuel Springs and Charles Crowell to 208.32 acres of the homestead tract; that said parties then by false representations induced the wife of James R. Abernathie to sign said paper, and that the deed was without consideration; that between the date of the execution of said deed and January 22, 1879, said Hanners, while he was the duly appointed and qualified administrator of said estate, procured separate deeds from each of the last mentioned grantees to himself for all of said lands; that said Hanners was appointed administrator *de bonis non* of said estate on July 29, 1878, and as such, on July 7, 1879, filed a petition asking an order to sell the remaining 40 acres of said homestead tract to pay debts; that a decree of sale was entered without in any manner disposing of the dower of the widow or the homestead of the widow and minor children, and that said Ware acted as guardian *ad litem* for said minors; that in his petition for sale said Hanners swore that said 40-acre tract was worth $200, and that on May 15, 1880, he sold the same to his deputy, Joseph H. Sampson, for $45, and on March 14, 1881, said Sampson conveyed said tract of land to Hanners for $45; that on the same day Hanners conveyed all of said 248.32 acres to T. J. Murphy for $850,

and on December 9, 1882, Hanners conveyed the same tract to Ware; that on January 1, 1883, T. J. and G. W. Murphy conveyed said tract to Ware, and on January 4, 1883, Ware conveyed an undivided one-half interest in the same to David W. Karraker, and on April 14, 1883, Karraker and wife and Ware conveyed all of said tract to William C. Rich, Sr.; that on January 17, 1883, Hanners conveyed the 160-acre tract to one Elijah Hartline, who afterward, on February 20, 1883, conveyed it to Jacob Rendleman; that Rendleman afterward died testate, appointing John Rendleman executor of his last will, with power to sell and dispose of his real estate; that John Rendleman, as such executor, conveyed said land to Robert Rendleman, who at the time of said conveyance to him knew that the heirs of James M. Abernathie had been defrauded of said lands. The bill further alleges that all of the defendants knew, at the time they purchased said lands, that the title thereto acquired by Hanners had been obtained by fraud and circumvention; that as administrator, to cover up and conceal his acts, Hanners never made a report to the county court and has never obtained his discharge; alleges that the complainants did not learn that the deed from James M. Abernathie was not intended to convey the title to said lands and that the same was not delivered until within five years next before the commencement of this suit, and that James R. Abernathie, through fear of criminal prosecution if he revealed how he obtained the deed made by his father and how the other deeds were obtained from him, kept such transactions secret from the complainants; that William C. Rich, Sr., and Robert Rendleman, defendants herein, have been in possession of said lands since they were conveyed to them and have received the rents and profits therefrom. The bill prays that the deed from James M. Abernathie to James R. Abernathie, and all the conveyances of said premises from that time down to and including the conveyances to Rich and Rendleman, be canceled and de-

clared null and void as to the complainants, and that an accounting be taken of the rents and profits between the complainants and defendants Rich and Rendleman. Rich, Ware, Hanners, Karraker, Robert Rendleman and James R. Abernathie were the only defendants to the bill.

Pleas were interposed to the bill by Ware, Karraker, Rich and Rendleman setting up the Statute of Limitations of twenty years, seven years' payment of taxes with color of title and possession, and seven years' payment of taxes with color of title to vacant land. Hanners filed an answer, which was a general denial of the allegations of the bill. Rich, Ware, Karraker and Rendleman also answered, admitting the execution of the various deeds at the times stated in the bill; alleging that the deed and bill of sale executed by James M. Abernathie and wife were made for the express purpose of transferring the title to the property therein conveyed to James R. Abernathie; that James M. Abernathie was indebted to Springs, Collins and Crowell in the sum of $1200, and in consideration of that debt the conveyance of the said 208.32 acres was made to them by James R. Abernathie and wife, and alleging that the grantors knew for what purpose the deed was executed; admitting that Rich and Rendleman have been in possession of the land since its conveyance to them; alleging that the two latter have paid the taxes thereon and claim to own the same; averring that if complainants ever had any cause of action the same has been barred by the Statute of Limitations and *laches,* and denying the other material allegations of the bill. In addition the answer of Rendleman alleges that said land conveyed to him was sold for taxes on June 11, 1877, to William C. Rich, Sr., who received a deed therefor on September 1, 1879, and that the title so obtained by Rich is now vested in Rendleman. James R. Abernathie defaulted.

Replications were filed and the cause was referred to a special master to take and report the proofs. Upon the

coming in of his report a hearing was had, and on July 7, 1905, the court entered a decree dismissing the bill for want of equity. Complainants bring the record here by writ of error. It is urged by them that the court erred in dismissing the bill.

TAYLOR DODD, and RICHARD PEERY, for plaintiffs · in error.

M. C. CRAWFORD, H. F. BUSSEY, and D. W. KARRAKER, for defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In this case there was a fatal lack of parties. James M. Abernathie left, among other heirs, Mary Nickens, a daughter. After his death and prior to the beginning of this suit she departed this life, whether testate or intestate does not appear, but it is shown by the proof that she left two children, who still survive and who reside in Union county. These children of Mary Nickens were not made parties and no person was made a party who had succeeded to her interest, if any, in the subject matter of this suit. The bill prayed for an accounting as to rents and profits. If the bill were proven, those who succeed to the rights of Mary Nickens would be entitled to a portion of such rents and profits. It has been frequently held in partition suits that all persons having an interest in the land must be made parties. (*Kester* v. *Stark,* 19 Ill. 328; *Daniel* v. *Green,* 42 id. 471.) It is apparent that the reason of that holding requires that those who succeed to the rights of Mary Nickens, and who on the theory of the bill own an interest in the lands and are entitled to share in such rents and profits, should in some way have been made parties to this proceeding.

The record title to the real estate appeared, by the instruments offered, to have passed by various *mesne* convey-

ances from James M. Abernathie to William C. Rich, Sr.,
and Robert Rendleman. Certain of these *mesne* convey-
ances were warranty deeds, which the bill prays may be can-
celed and by decree declared null and void, and the bill also
asks that the title which such deeds seemed to convey should
be decreed to be in the complainants. The grantors in cer-
tain of the warranty deeds which complainants sought to
have canceled and held null and void were not made parties
to the suit. If a decree should be entered in accordance
with the prayer of the bill these grantors would be exposed
to litigation by reason of the breach of their covenants of
warranty. Those warranty deeds should not be set aside
in this suit as to the grantees therein except by a decree
binding upon the grantors therein. We are of the opinion
that the rights of these grantors and the rights of those
who succeed Mary Nickens are so intimately connected with
the subject matter of the controversy that a final decree could
not be made in this cause without materially affecting their
interests. Where this appears, neither the court of original
jurisdiction nor a court of review should proceed further in
the matter until the omission be corrected, even though, as
here, no objection is made by any party litigant. *Herring-
ton* v. *Hubbard,* 1 Scam. 569; *Spear* v. *Campbell,* 4 id. 424;
*Prentiss* v. *Kimball,* 19 Ill. 320; *Knopf* v. *Chicago Real Es-
tate Board,* 173 id. 196.

In this case the defect of parties resulted, in the first in-
stance, from the fact that complainants below, plaintiffs in
error here, did not make the necessary parties to the bill. If
the plaintiffs in error were all free from legal disability we
would not reverse the decree against them for the reason,
alone, that there was a lack of necessary parties, but one of
the complainants below, Sarah A. Abernathie, a daughter
of James M. Abernathie, deceased, has been of unsound
mind since the time of her father's decease and had been
adjudged insane prior to the filing of the bill. *Laches* could
not be imputed to her, nor can it be said that she is charge-

able with fault on account of the omission of necessary parties. It is our province to protect her in this regard, and we will not proceed further in the matter until the defect in parties is cured.

The decree of the circuit court will be reversed and the cause will be remanded, with directions to that court to grant leave to the complainants to amend their bill in such manner as to make the necessary parties thereto, if such leave shall be sought. Each party will pay one-half the costs of this court.    *Reversed and remanded, with directions.*